UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES COLLINS,

       Plaintiff,

v.                           Case No:  8:21-cv-1169-JLB-SPF

NATIONSTAR MORTGAGE,
LLC, d/b/a MR. COOPER,

       Defendant.

_____/

**<u>ORDER</u>**[1]

Plaintiff James Collins has sued his loan servicer, Defendant Nationstar Mortgage, LLC ("Nationstar"), for breach of contract (Count I), violation of the Real Estate Settlement Procedures Act ("RESPA") (Count III), and violation of the Florida Consumer Collection Practices Act ("FCCPA") (Count IV).[2] (Doc. 32.)  The parties' dispute concerns Mr. Collins's failure to make payments on his mortgage loan and Nationwide's ostensibly confusing communications about the payments due and balance owed.

---

[1]    Documents hyperlinked to CM/ECF are subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them.  The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2]    Mr. Collins's second amended complaint does not contain a Count II.

Having obtained two previous dismissals, (Doc. 15; Doc. 28), Nationwide again moves to dismiss Mr. Collins's second amended complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).[3]  (Doc. 36.) Mr. Collins opposes the motion.  (Doc. 38.)  After careful review, the Court grants the motion in part, dismisses with prejudice the RESPA and FCCPA claims, and declines to exercise supplemental jurisdiction over the state law breach of contract claim that remains.

## BACKGROUND[4]

In 2010, Mr. Collins obtained a mortgage loan for his Florida home. (Doc. 32 ¶ 9; Doc. 32-1.)  After Mr. Collins fell behind on his mortgage payments, Nationstar filed a foreclosure action in state court.  (Doc. 32 ¶ 10.) Although a sale date was set, the parties pursued a modification plan.  (Id. ¶¶ 15–17.)  Based on Mr. Collins's payments under a trial modification plan,

---

[3]      In its order dismissing the first amended complaint, the Court noted that Mr. Collins had not "specif[ied] the basis for the Court's subject matter jurisdiction over the action," as required by Federal Rule of Civil Procedure 8.  (Doc. 28 at 4.)  The Court stated: "Should he amend the complaint, he must correct this omission."  (Id.) (emphasis added).
         Despite the Court's clear instruction, Mr. Collins did not correct the omission in the second amended complaint.  Nationstar also moves for dismissal under Federal Rule of Civil Procedure 12(b)(1) on this basis.  (Doc. 36 at 6.)  In his response, Mr. Collins attributes the deficiency to an "unfortunate scrivener's error."  (Doc. 38 at 4.)
         Mr. Collins's RESPA claim is a basis for federal question jurisdiction over this action.  But because this action is due to be dismissed for other reasons, the Court will not further address Mr. Collins's repeated omission.
[4]      The Court accepts as true the factual allegations as pleaded in the second amended complaint, as it must when considering a motion to dismiss.  See Chandler v. Sec'y of Fla. Dep't of Transp., 695 F.3d 1194, 1198–99 (11th Cir. 2012).

Nationstar sought to cancel the foreclosure sale.  (Id. ¶¶ 18, 20.)  But the sale went forward because Nationstar did not follow the state court's local rules. (Id. ¶¶ 21, 23.)  Mr. Collins filed an emergency motion to vacate the foreclosure sale and, after an evidentiary hearing on the matter, the state court vacated the sale.  (Id. ¶¶ 24–25.)  On Nationstar's motion, the state court then vacated the final judgment and dismissed the action without prejudice.  (Id. ¶¶ 26–27.)

Meanwhile, the parties executed a permanent modification plan, effective May 17, 2019.  (Id. ¶ 26.)  Payments under the loan modification were to begin July 1, 2019, but Nationstar refused to accept payments until September 2019.  (Id. ¶ 28.)  In the months that followed, Collins received Nationstar correspondence that reflected widely varying amounts due:

| | | |
|---|---|---|
| September 2019 Statement | $23,256.02 due | Doc. 32 ¶ 29; Doc. 32-3 at 17 |
| September 18, 2019 Letter | $23,256.02 due | Doc. 32-3 at 21 |
| October 2019 Statement | $2,245.90 due | Doc. 32 ¶ 30; Doc. 32-3 at 11 |
| October 21, 2019 Letter | $2,245.90 due | Doc. 32-3 at 15 |
| November 2019 Statement | current with $840.30 due January 2020 | Doc. 32 ¶ 31; Doc. 32-3 at 7 |
| December 2019 Statement | current with $840.30 due January 2020 | Doc. 32 ¶ 32; Doc. 32-3 at 1 |
| March 23, 2020 Letter[5] | $11,012.53 due | Doc. 32 ¶ 33; Doc. 32-3 at 5 |

---

[5]     Mr. Collins calls this document a "statement."

3

In July 2020, Mr. Collins sent a Notice of Error to Nationstar that asked the loan servicer to (1) acknowledge and reflect the modification in the account; (2) apply correctly all payments made after the June 1, 2019 modification; (3) accept payments; (4) eliminate any late fees, costs, or other such fees after June 1, 2019; and (5) advise as to what payments were due. (Doc. 32 ¶¶ 34–35; Doc. 32-4.)

Nationstar responded by letter dated August 27, 2020, in which it attributed the accounting discrepancies to complications in the "booking" of the loan modification and its own misapplication of funds. (Doc. 32 ¶¶ 36–37; Doc. 32-5.) As for the timeline for booking the loan modification, Nationstar explained that it received the loan modification documents on May 22, 2019 but that the loan modification was not booked until October 16, 2019 because of delays related to the foreclosure sale. (Doc. 32-5 at 2.) Nationstar explained that, internally, its foreclosure department tried to cancel the foreclosure sale, but after the sale went forward, it worked from May 2019 until August 2019 rescinding the sale. (Id.) Only when the foreclosure sale was rescinded could Nationstar's centralized modification department proceed with the loan modification. (Id.)

Next, externally, the loan modification could not be booked until the Government National Mortgage Association approved the buyout and returned the collateral file, which occurred on October 11, 2019. (Id.)

Nationstar then officially booked the loan modification on October 16, 2019, at which point it waived the fees assessed after June 1, 2019.  (Id. at 2–3.)

As to applying payments, Nationstar explained that before the loan modification was booked, it applied Mr. Collins's September 27, 2019 payment to the February 2, 2017 installment—the earliest installment owing.  (Id. at 3.)  So when the loan modification was booked, the September 1, 2019 installment showed as unpaid.  (Id.)

Next, Nationstar described its erroneous application of $5,324.02 from Auction.com (i.e., not from Mr. Collins).  (Id.)  Rather than applying the funds to "corporate expenses," as intended, Nationstar applied the funds to the September, October, November, and December 2019 installments, with the balance going to "corporate advances."  (Id.)  After these payments were applied, the account was showing due for January 1, 2020, which is why the November and December 2019 statements showed no payment was due.  (Id.) And on January 6, 2020, Nationstar received Mr. Collins's web payment of $840.30, making the next due date February 1, 2020.  (Id.)

But Nationstar corrected its misapplication of funds on March 19, 2020, reversing the payments and crediting them—as originally intended—to pay back expenses on the account.  (Id.)  So the earliest unpaid post-modification installment was September 1, 2019, to which the January 6, 2020 payment was applied.  (Id.)  This left the October 1, 2019 installment as the next to be

paid.  (Id.)  Nationstar then stated:  "[P]lease be advised that the only

payment we received directly from [Mr. Collins] after the loan was modified

was on January 6, 2020."  (Id.)

Nationstar included the following "RESPA RESPONSE TO NOTICE

OF ERROR":

> Under applicable federal law, we are required to
> inform you that after completing a reasonable
> investigation into the issues described above, an error
> occurred.  We corrected the error on March 19, 2020 by
> reversing the funds that posted towards the payments
> on November 3, 2019.  You have the right to access the
> document we used in this investigation and have
> enclosed it.  The document is:  Transaction History.

(Id.)

After receiving the August 27, 2020 letter, Mr. Collins sued; he now

alleges breach of contract (Count I), violation of RESPA (Count III), and

violation of the FCCPA (Count IV).  (Doc. 32.)  Nationstar moves to dismiss

all claims under Federal Rule of Civil Procedure 12(b)(6). (Doc. 36.)

## LEGAL STANDARD

A plaintiff states a claim for relief sufficient to avoid a motion to

dismiss under Federal Rule of Civil Procedure 12(b)(6) when the complaint

"contain[s] sufficient factual matter, accepted as true, to state a claim that is

plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A party

must plead more than "labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A court's consideration of a Rule 12(b)(6) motion is limited "to the pleadings and exhibits attached thereto." Grossman v. NationsBank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam) (internal quotations omitted).

## DISCUSSION

The Court has dismissed without prejudice two previous iterations of this complaint. (Doc. 15; Doc. 28.) In its last such order, the Court granted Mr. Collins "one more opportunity to replead." (Doc. 28 at 4, 8, 9, 14, 16.) Mr. Collins has used his last opportunity to state a plausible claim for breach of contract, but his RESPA and FCCPA claims are due to be dismissed again.

## Mr. Collins Has Plausibly Alleged Breach of Contract

The Court dismissed Mr. Collins's first iteration of his breach of contract claim for failure to attach the contractual documents to his complaint and to identify the specific contractual provisions allegedly breached. (Doc. 15 at 3–4.) The Court dismissed Mr. Collins's second iteration of his breach of contract claim because, although he attached the documents to his amended complaint, he still failed to specify which contractual provisions Nationstar allegedly breached. (Doc. 28 at 8–9.) On this, his third attempt, he has cured those failures. And he alleges in his

Second Amended Complaint that Nationstar breached the loan modification in two ways.

First, Mr. Collins argues in count one that by applying his September 2019 payment to the February 2017 installment, Nationstar breached the provision of the mortgage that governs application of payments (Doc. 32-1 at 3) and the payment schedule of the loan modification agreement (Id. at 11–12; Doc. 32 at 8–10.) Second, Mr. Collins argues Nationstar breached the loan modification agreement and note (Doc. 32-1 at 18) by failing to accept payments, advising Mr. Collins not to make payments, and then assessing fees based on Mr. Collins's failure to make those same payments. (Doc. 32 at 10–13.)

Mr. Collins claims Nationstar's alleged breaches caused him actual damages in that, relying on Nationstar's instructions, he spent the money he had earmarked for mortgage payments on other necessities and was then left without the ability to catch up on his past-due payments and fees. (Id. at 14.) Mr. Collins also claims actual damages in attorney fees, costs, other fees, and interest. (Id.)

Nationstar argues Mr. Collins's breach of contract claim must be dismissed because he has "fail[ed] to allege any facts to support his theory that non-payment of his mortgage qualifies as a current, actual damage that

he has suffered."  (Doc. 36 at 10.)  It also contends that, by contract, Mr. Collins cannot seek attorneys' fees or costs.  (Id.)

"Under Florida law, a plaintiff asserting a breach of contract claim must demonstrate '(1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach.'"  Domante v. Dish Networks, L.L.C., 974 F.3d 1342, 1347 (11th Cir. 2020) (quoting Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. 2d DCA 2006)) (per curiam).  Having cured the deficiencies identified by the Court, Mr. Collins has alleged the existence of a contract (which he has attached and referenced in the complaint), a breach of that contract, and damages.  This sufficiently states a claim for breach of contract.

Still, the loan modification agreement provides that Mr. Collins is liable for his own attorney fees and costs incurred in any action arising out of or relating to the agreement.  (Doc. 32-1 at 13.)  So any potential recovery for Mr. Collins's breach of contract claim will be limited to what actual damages he can prove.  Should he refile this action in state court, he might consider amending his complaint.

## Mr. Collins Has Failed Plausibly to Allege a Violation of RESPA

In count three, Mr. Collins challenges Nationstar's response to his Notice of Error in three respects, and he seeks to state violations of RESPA

as to each.  (Doc. 32 at 14–19.)  RESPA requires a loan servicer to respond to a notice of error by either correcting the errors the borrower has identified and providing a written notification of that correction or conducting a reasonable investigation into the alleged errors and providing a written notification that no error has occurred, including a statement of its reasons for that determination.  12 U.S.C. § 2605(e)(2)(A)–(B); 12 C.F.R. § 1024.35(e)(1)(i)(A)–(B).

As with Mr. Collins's first amended complaint (Doc. 28 at 11–13), the allegations of RESPA violations in the second amended complaint are not borne out by the contents of Mr. Collins's Notice of Error or Nationstar's response.  Mr. Collins's Notice of Error asked Nationstar to (1) acknowledge and reflect the loan modification in the account; (2) apply correctly all payments made after the June 1, 2019 modification; (3) accept payments; (4) eliminate any late fees, costs, or other such fees after June 1, 2019; and (5) advise as to what payments were due.  (Doc. 32 ¶¶ 34–35; Doc. 32-4.)

In the second amended complaint, Mr. Collins alleges, first, that Nationstar failed correctly to apply payments made under the loan modification by applying Mr. Collins's September 2019 payment to the February 2017 installment, and it violated RESPA by failing to state that such error occurred.  (Doc. 32 at 15–16.)  The Notice of Error did not single out the September 2019 payment as being problematic; instead, it requested

10

that Nationstar "correctly apply all payments made after the June 1, 2019 modification." (Doc. 32-4 at 1.)  And in its response to the Notice of Error, Nationstar explained its method of applying Mr. Collins's payments in detail—including the September 2019 payment—and how its payment application was affected by the rescinded foreclosure and resulting complications booking the loan modification.  (Doc. 32-5 at 2–3.)

Second, Mr. Collins alleges Nationstar misapplied funds from Auction.com, and (although Nationstar acknowledged this error) it violated RESPA by failing to change the loan modification to "mak[e] the November and December payments $0" and to waive "any fees for those two months of $0 payments" after it corrected its misapplication.  (Doc. 32 at 16–18.)  The Notice of Error did not single out the November or December 2019 statements as being problematic, nor did it request that the loan modification be changed.  Instead, it requested that Nationstar immediately acknowledge and reflect the loan modification in the account, correctly apply all payments made after the loan modification, accept payments on the account, eliminate late fees and costs assessed after June 1, 2019, and advise as to what payments were due.  (Doc. 32-4 at 1.)  And in its response to the Notice of Error, Nationstar acknowledged its error in applying the funds received from Auction.com, informed Mr. Collins it had waived all fees assessed between

June 1, 2019 and the date the loan modification was "booked," and explained how it applied Mr. Collins's payments.  (Doc. 32-5 at 2–3.)

Third, Mr. Collins alleges Nationstar erred by delaying the loan modification's "booking," and it violated RESPA by failing to acknowledge this error (or stating that no error occurred), and imposing fees without a reasonable basis after the loan modification was booked.  (Doc. 32 at 18–19.) The Notice of Error did ask Nationstar to eliminate late fees and costs assessed after June 1, 2019.  (Doc. 32-4 at 1.)  And in its response to the Notice of Error, Nationstar explained the factors that complicated and delayed the "booking" of the loan modification and stated that it waived the fees assessed between June 1, 2019 and the date the loan modification was finally "booked."  (Doc. 32-5 at 2–3.)

While Mr. Collins was confused by the statements and correspondence he received from Nationstar—this confusion was the crux of the Notice of Error—the second amended complaint and supporting exhibits, viewed in a light most favorable to Mr. Collins, show that Nationstar investigated Mr. Collins's specific concerns and responded in detail.  See Hernandez v. J.P. Morgan Chase Bank N.A., No. 14-24254-civ, 2015 WL 9302827, at *7–8 (S.D. Fla. Dec. 21, 2015) (dismissing claim where servicer's letter "directly [met] the substance of Plaintiff's request" and showed the servicer investigated the request, and there were no non-conclusory allegations of an inadequate

investigation or that the information provided was false); <u>see also</u> <u>Finster v.</u>
<u>U.S. Bank Nat'l Ass'n</u>, 723 F. App'x 877, 881 (11th Cir. 2018) (per curiam)
(concluding the loan servicer's "responses complied with RESPA by providing
an explanation to [the plaintiff] as to why her loan modification was denied,
even though she was understandably unsatisfied with the responses and
found [the defendant's] actions to be unreasonable").

Count III does not state a claim under 12 U.S.C. § 2605(e)(2) and must
be dismissed.[6]

### Mr. Collins Has Failed to Plausibly
### Allege a Violation of the FCCPA

Mr. Collins further alleges that, in violation of Florida Statute §
559.72(9), Nationstar sent monthly statements to Mr. Collins it "knew" were
not legitimate. Florida Statute § 559.72(9) provides:

> In collecting consumer debts, no person shall: . . .
> (9) Claim, attempt, or threaten to enforce a debt when
> such person knows that the debt is not legitimate, or
> assert the existence of some other legal right when
> such person knows that the right does not exist.

---

[6]     The Court notes that Mr. Collins seeks statutory, actual, and punitive damages,
as well as costs and attorney fees for these alleged RESPA violations. (Doc. 32 at 19.)
But punitive damages are not provided by statute, and Mr. Collins has not made any
factual allegations that would support a finding of a pattern or practice of
noncompliance to support statutory damages. See 12 U.S.C. § 2605(f)(1). The Court
noted this added deficiency previously, related to Mr. Collins's first amended complaint.
(Doc. 28 at 8 n.3.)

A claim under this section requires a showing of actual knowledge.  See LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1192 n.12 (11th Cir. 2010) (per curiam).

Mr. Collins challenges three specific monthly statements: September 2019, which he alleges Nationstar knew was not legitimate based on the terms of the loan modification; October 2019, which he alleges Nationstar knew was not legitimate based on his unacknowledged September 2019 payment; and March 2020, which he alleges Nationstar knew was not legitimate based on the loan modification. (Doc. 32 at 20–21.)  Mr. Collins notes that in its August 27, 2020 response to his Notice of Error, Nationstar acknowledged its error in applying Mr. Collins payments but did not retreat from its position that the account was due for the October 2019 installment and also did not rescind the fees reflected in the March 2020 letter. (Id. at 21.)

Nationstar contends Mr. Collins's claim under section 559.72(9) fails because he has not alleged facts to support either actual knowledge or that the debt was invalid. (Doc. 36 at 16–18.)  In response, Mr. Collins makes an argument unsupported by caselaw[7] that a "sophisticated, national" loan servicer should know of the terms of any contract it enters. (Doc. 38 at 8–9.)

---

[7]      Mr. Collins does not provide legal authority for this argument or, indeed, for any of the arguments in his response in opposition to Nationstar's motion to dismiss.

But these are conclusory statements, and conclusory allegations of knowledge are insufficient.  See Characo v. Phoenix Fin. Servs., LLC, No. 6:20-cv-1168-Orl-37DCI, 2020 WL 8379174, at *2 (M.D. Fla. Nov. 3, 2020).

As Nationstar's response to Mr. Collins's Notice of Error explains, the loan modification was not timely "booked" for several reasons, both internal and external.  (Doc. 32-5 at 2.)  Mr. Collins has made no factual allegations to support either that the debt was illegitimate or that Nationstar "knew" it was seeking to collect an illegitimate debt.  Without such factual allegations, Count IV must be dismissed.  See Finster, 723 F. App'x at 882 (affirming summary judgment for loan servicer on FCCPA claim where there was no evidence of actual knowledge); Schauer v. Morse Operations, Inc., 5 So. 3d 2, 6 (Fla. 4th DCA 2009) ("The [FCCPA] does not provide for recovery if the creditor merely should have known the debt was not legitimate.").

## Supplemental Jurisdiction

The Court has dismissed the federal claim.  And although a federal district court is given supplemental jurisdiction over state law claims that "form part of the same case or controversy" as federal claims over which it has original jurisdiction, a court "may decline to exercise supplemental jurisdiction over [such] claim[s] . . . if . . . [it] has dismissed all claims over which it has original jurisdiction."  See 28 U.S.C. § 1367(a), (c)(3).  "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right."  United Mine

Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (footnote omitted); see also

Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088–89 (11th Cir. 2004) (per

curiam) (citation omitted).  And in these circumstances, the Eleventh Circuit

"strongly encourages" district courts to decline supplemental jurisdiction.

Mergens v. Dreyfoos, 166 F.3d 1114, 1119 (11th Cir. 1999).

When deciding whether to exercise supplemental jurisdiction, district

courts should consider "concerns of comity, judicial economy, convenience,

fairness, and the like."  Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.,

Fla., 402 F.3d 1092, 1123 (11th Cir. 2005) (quotation omitted).  After review,

the Court employs its discretion and declines to exercise supplemental

jurisdiction over Mr. Collins's remaining state law claim.  28 U.S.C. §

1367(c)(3).

First, judicial economy weighs against exercising supplemental

jurisdiction.  Judicial economy is "served when issues of state law are

resolved by state courts."  Rowe v. City of Fort Lauderdale, 279 F.3d 1271,

1288 (11th Cir. 2002).

Second, convenience points to retaining jurisdiction—but only just.

The Eleventh Circuit has noted, "as far as the parties are concerned, it would

be most convenient to try every claim in a single forum."  Ameritox, Ltd. v.

Millennium Labs., Inc., 803 F.3d 518, 539 (11th Cir. 2015).

Third, fairness considerations do not favor jurisdiction here.  Each "litigant who brings supplemental claims in [federal] court knowingly risks the dismissal of those claims." Id.  Because this case has not progressed past Nationstar's motion to dismiss, it is still in the early stages of litigation.  See Raney, 370 F.3d at 1089 (encouraging district courts to dismiss remaining state claims when the federal claim has been dismissed before trial).

Fourth, comity cuts against exercising supplemental jurisdiction.  "It is a bedrock principle that 'needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.'" Ameritox, 803 F.3d at 540 (quoting Gibbs, 383 U.S. at 726) (alteration omitted).

Finally, there are no concerns about the timeliness of Mr. Collins's claims because section 1367(d) tolls the statutes of limitation for state claims while they have been pending in federal court and for thirty days after an order of dismissal. See 28 U.S.C. § 1367(d); Jinks v. Richland Cnty., 538 U.S. 456, 465 (2003) (upholding 28 U.S.C. § 1367(d) as constitutional); Beck v. Prupis, 162 F.3d 1090, 1099–1100 (11th Cir. 1998) ("[A] dismissal under section 1367 automatically tolls the statute of limitations on the dismissed claims for 30 days.").

On balance, these factors weigh against the Court's exercise of supplemental jurisdiction.

## CONCLUSION

It is now **ORDERED**:

(1) Nationstar's motion to dismiss (Doc. 36) is **GRANTED** to the extent that Counts III and IV are **DISMISSED with prejudice**.

(2) The Court declines to exercise supplemental jurisdiction over Count I, so that claim is **DISMISSED without prejudic**e for Plaintiff to file such a claim in a court of competent jurisdiction.

(3) The Clerk is **DIRECTED** to deny any pending motions, terminate all deadlines, enter judgment on Counts III and IV, and close the case.

**ORDERED** in Tampa, Florida on July 20, 2022.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record